# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ARTIS C. CARROLL, JR. | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 16-1406 |
| MILLERSVILLE UNIVERSITY OF PA, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                            **June 6, 2019**

Artis C. Carroll *pro se* sues Millersville University, UPMC Pinnacle Lancaster, and twenty-three others[1] on various federal and state law claims. The University, as the only served party to date, moves to dismiss the three claims against it: civil rights violations and breach of contract arising from an alleged fraudulent grade in one of his classes, the University's alleged improper subsequent dismissal of him from an academic program, offensive conduct towards him, and the University's denial of his student records.[2] We dismiss the claims against the University because the University is afforded sovereign immunity as a state agency. Even if sovereign immunity did not bar the claims, Mr. Carroll fails to state a claim against the University.

## I. Alleged facts

The University accepted Mr. Carroll, an African American, as a student in July 2011.[3] Mr. Carroll entered the Millersville University Respiratory Therapy Program (MURTP) starting Fall 2012.[4] MURTP is a contractual program between the University and UPMC Pinnacle Lancaster.[5] The University dismisses a student from the MURTP if the student's Grade Point Average is below a 2.0 for two consecutive semesters (and remains below that threshold for the probationary period) or the student receives a D- or below as a final grade.[6]

Mr. Carroll finished the Summer 2014 semester with a 2.35 MURTP Grade Point Average and a 2.50 University Grade Point Average.[7] At the start of the Fall 2014 semester, Mr. Carroll

filed a complaint with the University alleging MURTP's Director, Elaine Chrissos, and MURTP's Assistant Director, Jarrod Harteman racially discriminated against him.[8] Mr. Carroll alleges Director Chrissos and Assistant Director Harteman called him racially charged names, made racist jokes, and gave him the middle finger.[9] Around mid-December 2014, Director Chrissos dismissed Mr. Carroll from the MURTP.[10] Mr. Carroll alleges she prematurely dismissed him because she should have put him on academic probation under the MURTP Student Handbook.[11] Mr. Carroll alleges the MURTP Student Handbook is a contract.[12] Mr. Carroll appealed his dismissal, claiming his D grade as inaccurate, but even if it were true, he should have been placed on probation.[13] Director Chrissos and Assistant Director Harteman affirmed the dismissal.[14] Mr. Carroll alleges Director Chrissos changed his grade a second time from an already false D to a D- which would allow his dismissal without a probation period.[15]

Mr. Carroll began a Grade Appeal procedure.[16] He asked to see his student records.[17] The University denied his appeal at all three steps of the Grade Appeal procedure.[18] During this appeal process, the University's Judicial Affairs Assistant Director Ron Wiafe charged Mr. Carroll with violating the student code of conduct.[19] Assistant Director Wiafe held a hearing on these charges in February 2015.[20] Despite the alleged lack of evidence, Assistant Director Wiafe found Mr. Carroll violated the student code of conduct and required him to attend counseling.[21]

In March 2015, Mr. Carroll served the University's Dean Robert Smith with a Family Educational Rights and Privacy Act (FERPA) Request form to access his records.[22] The University held a FERPA meeting where Dean Smith and Dr. John Hoover, Chairman of the Biology Department,[23] gave Mr. Carroll about half of the requested documents.[24] Dr. Hoover told Mr. Carroll if he continued requesting documents, then the University would charge him with violating the student code of conduct.[25] Dean Smith relayed they discovered a grade mistake—

2

his D- should be a D—and told Mr. Carroll they sent a Grade Change form to the Registrar's Office.[26] Mr. Carroll asked for a copy of this Grade Change form, but Dean Smith replied he would have to pick it up from the Registrar's Office.[27] When Mr. Carroll went to the Registrar's Office, Wendy "Doe"[28] said the Grade Change form was not present, and asked Mr. Carroll to leave.[29] Mr. Carroll did not leave until two officers and a trainee arrived.[30] The following day, March 26, 2015, Vice President of Student Affairs[31] Thomas Richardson advised Mr. Carroll the Grade Change form could now be picked up at the Registrar's Office.[32] When Mr. Carroll went to the Registrar's Office, John Sicotte[33] told Mr. Carroll to leave.[34] Mr. Carroll attempted to leave but Sgt. Jason Flood arrested him for simple trespass with intent to terrorize.[35]

On March 27, 2015, Judicial Affairs Director Lori Austin emailed Mr. Carroll requesting a meeting.[36] She charged him with violating more student code of conduct regulations, notified him of an interim suspension arising from the March 25th and March 26th incidents, and advised he should remain off University property or he would be charged with trespassing.[37] Apparently ignoring this notice, Mr. Carroll attended class on March 31, 2015, and Officer Richard Stuchkus arrested him for a defiant trespass, actual communication to actor.[38] On December 1, 2015, a state court jury convicted Mr. Carroll for his March 26 and March 31, 2015 conduct.[39]

II.  **Analysis**

Mr. Carroll filed this case against the University on April 1, 2016.[40] He filed an amended complaint on March 27, 2017.[41] After various delays,[42] Mr. Carroll filed a second amended complaint.[43] The University now moves to dismiss Mr. Carroll's three claims against it for lack of subject matter jurisdiction and for failure to state a claim.[44] We grant the University's Motion.

3

### A. Sovereign immunity bars Mr. Carroll's claims against the University.

Mr. Carroll alleges we have jurisdiction because there are federal questions at issue.[45] But the Eleventh Amendment bars Mr. Carroll's federal claims:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[46]

The Supreme Court instructs the Eleventh Amendment bars suits against a state by its own citizens.[47] This constitutional bar has two exceptions: (1) when Congress "authorize[s] such a suit" and (2) when the State "waive[s] its sovereign immunity by consenting to suit."[48] Supplemental jurisdiction does not override sovereign immunity.[49]

The Commonwealth extends sovereign immunity to state agencies.[50] Our Court of Appeals instructs sovereign immunity, "which appl[ies] to the Commonwealth and its property, remain[s] in place" regarding the State System of Higher Education.[51] "There is no express legislative waiver of sovereign immunity as to the State System, and the language of 24 Pa. Stat. Ann. § 20-2016-A preserves the immunity intact."[52] Because the University is one of the fourteen universities associated with the Pennsylvania State System of Higher Education, the University has sovereign immunity.[53] The question is whether Mr. Carroll plead an exception to sovereign immunity

#### 1. Sovereign immunity bars Mr. Carroll's due process claim.

Mr. Carroll alleges the University violated his due process rights.[54] The University claims sovereign immunity bars this claim.[55]

"In order to bring suit under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of his constitutional rights, or rights secured by a federal statute[.]"[56] Even if Mr. Carroll's allegation has merit, neither of the two exceptions to sovereign immunity's application allow him to proceed regarding the Section 1983 claim against the

4

University. Congress has not abrogated Section 1983 claims.[57] Nor has the Commonwealth "waived its constitutional protection . . . and in fact, [the Commonwealth] expressly reserved its protection by statute."[58] Because neither of the two exceptions apply, the Commonwealth has sovereign immunity from Section 1983 claims. As a recognized state agency, the University is afforded the same protection.

We are persuaded by the district court's decision in *O'Hara v. Indiana Univ. of Pa.* where a professor at a state university alleged gender discrimination after the university denied her a tenured track position.[59] She sued the university for violations of equal protection.[60] The university argued immunity from suit under the Eleventh Amendment's protection of universities in the State System of Higher Education.[61] The district court rejected the plaintiff's claim, granting the defendant's motion[62] because of the "well-settled" understanding universities associated with the State System of Higher Education are entitled to sovereign immunity.[63]

We dismiss Mr. Carroll's § 1983 claim against the University because the University is a designated Pennsylvania State System of Higher Education state agency, and as such, it is afforded sovereign immunity under the Eleventh Amendment.

### 2. Sovereign immunity bars Mr. Carroll's federal claims under the Civil Rights Act of 1964.

Mr. Carroll claims the University violated his rights under Titles II, III and IV of the Civil Rights Act of 1964.[64] The University argues Mr. Carroll fails to meet a *prima facie* case for these claims. We dismiss the claims because the University has sovereign immunity as a state agency. Congress has not specifically abrogated claims under Title II, III, and IV of the Civil Rights Act of 1964 as it has under the Americans with Disabilities Act.[65] Nor has Pennsylvania waived its immunity as it has for suits under the Rehabilitation Act.[66]

5

### 3. Sovereign immunity bars Mr. Carroll's breach of contract claim.

The University argues sovereign immunity also bars Mr. Carroll's breach of contract claim.[67] Neither of the two exceptions to sovereign immunity apply as Congress has not abrogated it nor has Pennsylvania made an exception for contract claims waiving its right to sovereign immunity.[68]

Contract claims against an affiliated Pennsylvania State System of Higher Education entity are barred by sovereign immunity. In *Armenti v. Pa. State Sys. of Higher Edu.*, Pennsylvania's Commonwealth Court detailed:

> 1 Pa.C.S. § 2310 clarifies that the General Assembly has waived sovereign immunity "only in such manner and in such courts and in such cases" as set forth in Titles 42 and 62 of the Pennsylvania Consolidated Statutes . . . Under Title 62, the General Assembly has waived sovereign immunity for *certain contract claims* against the Commonwealth and its agencies, but that waiver applies only to claims "brought in accordance with" Sections 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies) and Subchapter C (relating to Board of Claims) and even then "only to the extent set forth in this chapter."[69]

Mr. Carroll's contract claim does not fall within these exceptions. His breach of contract claim against the University is bared by sovereign immunity.

### B. Even if sovereign immunity did not bar these claims, Mr. Carroll fails to state a claim.

Mr. Carroll has not plead an exception to sovereign immunity precluding suit against the University on his civil rights and breach of contract claims against it. Even assuming he could plead around sovereign immunity, he has not stated claims for relief. We dismiss the claims for failure to state a claim.

### 1. We dismiss Mr. Carroll's claim under Title II as Mr. Carroll has not plead the places he allegedly experienced discrimination are places of public accommodation.

Mr. Carroll alleges racial discrimination because Director Chrissos and Assistant Director Harteman called him racially charged names, made racist jokes, and gave him the middle finger.[70] The University moves to dismiss Mr. Carroll's Title II claim because it is not a place of "public accommodation."[71] Congress provided:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.[72]

Mr. Carroll's claims require the conduct occur in a place of public accommodation. Our Court of Appeals directs a place of public accommodation needs to "be one of the statutorily enumerated categories of establishments that serve the public," and "its operations must affect commerce."[73] The University argues "[s]tate universities are not within the statutorily enumerated categories of establishments under [Title II]."[74]

"[T]he overriding purpose of Title II [is] 'to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.'"[75] Mr. Carroll did not allege facts showing any space of the University, where he suffered harm, is a place of public accommodation. He alleges conduct in the Registrar's office and the classroom. He has not shown a basis for find these spaces are places of public accommodation.

In *Gilmore v. Amityville Union Free Sch. Dist.*, the district court dismissed the Title II claim as the plaintiffs did not offer "evidence to the contrary" showing the defendant was a place of public accommodation.[76] School board candidates claimed the defendant incorrectly counted election votes.[77] The election took place at two public schools within the district.[78] The district court found "that '[p]ublic schools do not purport to be open to the general public in the ways, that

7

for example, hotels, restaurants and movie theaters (all establishments explicitly covered by Title II) do.'"[79]

In *Martin v. Univ. of New Haven, Inc.*, the plaintiff alleged private university faculty harassed him and discriminated against him due to his religion.[80] The plaintiff claimed the private university is liable under the Civil Rights Act because there is a cafeteria on the premises, which satisfies the place of public accommodation.[81] The district court granted the defendant's motion for summary judgment because the plaintiff did not demonstrate the university's cafeteria serves the general public rather than only faculty, staff, and students.[82]

We are also persuaded by the court's reasoning in *Alja-Iz v. Ramsey*, where the plaintiff sued a public university for denying him "admission to certain higher-level math classes and to the [university's] PhD program."[83] The district court found, "[t]he University's graduate mathematics department is not a place of public accommodation as contemplated by Title II of the Civil Rights Act. Rather, it is a source of academic programs intended to have competitive admission policies and specialized areas of academic interest."[84] The district court also held "the concept of a place of public accommodation does not apply to the University as a whole or all of the actions of its agents."[85]

Mr. Carroll alleges the University discriminated against him by restricting his access to the Registrar's Office[86] and a classroom.[87] Because he does not plead facts indicating these areas are available to the public, we dismiss his Title II claim against the University.

### 2. We dismiss Mr. Carroll's claim under Title III as it does not allow him a private cause of action.

Mr. Carroll alleges the University violated his rights under Title III of the Civil Rights Act of 1964.[88] The University argues his Title III claim does not apply to a private party regarding Title II.[89] Congress in Title III, 42 U.S.C. § 2000b(a), provides:

8

> Whenever the Attorney General receives a complaint in writing signed by an individual to the effect that he is being deprived of or threatened with the loss of his right to the equal protection of the laws . . . and the Attorney General believes the complaint is meritorious . . . the Attorney General is authorized to institute for or in the name of the United States a civil action[.][90]

"Under existing case law, Title III, only authorizes actions by the Attorney General, and not private plaintiffs."[91] Because no citizen can bring a private claim under Title III of the Civil Rights Act of 1964, we dismiss Mr. Carroll's claim against the University under Title III.

### 3. We dismiss Mr. Carroll's claim under Title IV because Mr. Carroll does not allege the necessary facts, but even if he did, Title IV is not a separate cause of action.

Mr. Carroll alleges the University violated his rights under Title IV of the Civil Rights Act of 1964.[92] The University argues Title IV does not apply because Mr. Carroll does not allege segregation, which is the purpose of Title IV. Congress enacted Title IV "to remedy the problem of segregation in public schools and colleges."[93]

We are again guided by *Gilmore* where the court dismissed the Title IV claim because the plaintiff failed to allege specific facts related to the alleged segregation.[94] We are also persuaded by the district court's reasoning in *Davis v. Hooper*.[95] In *Davis*, a father sued the school district on his son's behalf for the school district's poor attempts to handle a classmate's inappropriate touching of his son at school.[96] The district court dismissed the Title IV claim because it "does not create a separate cause of action, but rather preserves private rights of actions under other civil rights acts."[97]

Mr. Carroll fails to allege facts related to segregation. But even if Mr. Carroll could allege segregation facts, Title IV does not provide a separate cause of action.[98] We dismiss Mr. Carroll's Title IV claim against the University.

9

### 4. We dismiss Mr. Carroll's breach of contract claim.

Mr. Carroll alleges the MURTP Student Handbook is a contract.[99] He claims the University violated the MURTP Handbook when Director Chrissos fraudulently changed his grade,[100] dismissed him from the program without a probation period,[101] and when the University denied him access to his student records.[102] The University argues Mr. Carroll incorrectly posits MURTP Student Handbook is a contract.[103]

"A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages."[104] The Pennsylvania Supreme Court "has declined to construe the student handbook of a public university as a contract between the public university and the student."[105] In *Johnson v. Temple Univ.*, the plaintiff sued the university for breach of contract.[106] The district court held the plaintiff's reference to the university's handbook as a contract is unfounded.[107] It granted the defendant's motion for summary judgment.[108] In *Borrell v. Bloomsburg Univ.*,[109] a former nursing student sued the university and the partnered medical center for breaching their contract and violating her due process rights when it expelled her from the nursing program.[110] The former student claimed the university's expulsion on the basis she refused to take a drug test is unfounded because "neither the Handbook nor the Policy required [her] to take a drug test in her circumstances."[111] The district court dismissed the plaintiff's breach of contract claims because the university is a public university and as such, the handbook does not create a contractual relationship.[112]

Because Mr. Carroll alleges the basis for the contractual relationship between him and the University is the MURTP Student Handbook, we find there is no contract. Absent a plead contract, we dismiss Mr. Carroll's breach of contract claim against the University.[113]

## III. Conclusion

We dismiss Mr. Carroll's claims because the University has sovereign immunity and no exceptions apply. We also dismiss Mr. Carroll's claims because he fails to state a claim.

---

[1] The other defendants are: (1) Elaine Chrissos; (2) Jarrod Harleman; (3) John Hoover; (4) Robert Smith; (5) Jonathan Klapper-Lehman; (6) Thomas Richardson; (7) Lori Austin; (8) Ron Wiafe; (9) Alison Huncthington; (10) Wendy "Doe"; (11) John Sicotte; (12) Brian Hazlett; (13) Rebecca Mowery; (14) Richard Stuchkus; (15) Jason Flood; (16) Christan Yanak; (17) Howard Bauman; (18) Phoulideth Chanthongthip; (19) Aminta Breaux; (20) John Anderson; (21) Craig Stedman; (22) Andrew Gonzalez; and (23) Trista Boyd. ECF Doc. No. 83.

[2] Mr. Carroll alleges violations of multiple federal laws: 42 U.S.C. § 1981 Equal Rights Under the Law; 42 U.S.C. § 1983 Civil Action for Deprivation of Rights; Title 42 U.S.C. § 1985(3) Conspiracy to Interfere with Civil Rights by Deprivation of Rights or Privileges; 28 U.S.C. § 1343(3) Civil Rights and Selective Franchises; The Family Educational Rights Privacy Act (FERPA); Title II § 201(a), 203(c), III, IV of the Civil Rights Act of 1964; and the Americans with Disabilities Act. ECF Doc. No. 83 at ¶ 2(c). He only claims three violations against the University: (1) 42 U.S.C. § 1983 Civil Action for Deprivation of Rights; (2) Breach of Contract; and (3) Title II, III, and IV of the Civil Rights Act of 1964. ECF Doc. No. 83 at ¶¶ 27, 44, 46.

[3] ECF Doc. No. 83 at ¶ 4.

[4] *Id.* at ¶ 5.

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶ 7.

[7] *Id.* at ¶ 8.

[8] *Id.* at ¶¶ 6, 9.

[9] *Id.* at ¶ 9.

[10] *Id.* at ¶ 10.

[11] *Id.*

[12] *Id.* at ¶ 7.

[13] *Id.* at ¶ 11.

11

[14] *Id.* at ¶ 10.

[15] *Id.* at ¶ 12.

[16] *Id.* at ¶ 14.

[17] *Id.*

[18] *Id.* at ¶¶ 14-16.

[19] *Id.* at ¶ 17; ECF Doc. No. 17-3 at 13-14.

[20] ECF Doc. No. 17-2; ECF Doc. No. 17-3 at 25.

[21] ECF Doc. No. 83 at ¶ 17.

[22] *Id.* at ¶ 16.

[23] ECF Doc. No. 17.

[24] ECF Doc. No. 83 at ¶ 18.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] Mr. Carroll does not plead "Doe's" position at the University.

[29] *Id.* at ¶ 20.

[30] *Id.*

[31] *Id.* at ¶ 28.

[32] *Id.* at ¶ 21.

[33] Mr. Carroll does not plead Mr. Sicotte's position at the University.

[34] ECF Doc. No. 83 at ¶ 21.

[35] *Id.* at ¶ 22.

[36] ECF Doc. No. 83 at ¶ 23.

³⁷ *Id.*

³⁸ *Id.* at ¶ 25.

³⁹ ECF Doc. No. 18-1 at 9; ECF Doc. No. 18-2.

⁴⁰ ECF Doc. No. 3.

⁴¹ ECF Doc. No. 17.

⁴² The University moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF Doc. No. 18. The court denied the University's motion and allowed Mr. Carroll the opportunity to change his already amended complaint. ECF Doc. No. 46 at n.1 ("I am granting this motion for leave to amend because of the *pro se* status of the plaintiff. It is important to allow such a plaintiff to have a full and complete opportunity to be heard. The newly amended complaint, however, shall be the second and last amended complaint"). The Clerk of Court reassigned the case. ECF Doc. No. 51. The University moved to dismiss under Fed. R. Civ. P. 41 because Mr. Carroll failed to file his second amended complaint by the deadline. ECF Doc. No. 52. The court denied the University's motion without prejudice and set a new filing deadline for Mr. Carroll. ECF Doc. No. 59. The Clerk of Court again reassigned the case. ECF Doc. No. 65. We gave Mr. Carroll another extension to file his second amended complaint. ECF Doc. No. 66 ("Plaintiff is granted one last chance to file an amended complaint"). The University again moved to dismiss because Mr. Carroll failed to file his second amended complaint by the deadline. ECF Doc. No. 69. We denied the University's motion to dismiss and gave Mr. Carroll another "last chance" to file an amended complaint. ECF Doc. No. 74 (emphasis removed) ("[W]e amend our October 9, 2018 (ECF Doc. No. 66) solely to allow Plaintiff one last chance to file a third amended complaint"). We placed the case in suspense while Mr. Carroll appealed a separate issue relating to counsel representation. ECF Doc. No. 78. Our Court of Appeals dismissed his appeal. ECF Doc. No. 81. We then gave Mr. Carroll a fourth "last chance" to file an amended complaint, which is now before us. ECF Doc. No. 82.

⁴³ ECF Doc. No. 83.

⁴⁴ ECF Doc. No. 85. We have jurisdiction over federal questions. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

13

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[45] ECF Doc. No. 83 at ¶ 2(a).

[46] U.S. CONST. amend. XI.

[47] *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) ("Accordingly, for over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States"); *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

[48] *College Sav. Bank. v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("When Congress acts pursuant to s[ection] 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts"); *Clark v. Barnard*, 108 U.S. 436, 447 (1883) ("The immunity from suit belonging to a state, which is respected and protected by the constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit, otherwise well brought, in which a state had sufficient interest to entitle it to become a party defendant, its appearance in a court of the United States would be a voluntary submission to its jurisdiction").

[49] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("The Eleventh Amendment should not be construed to apply with less force to [supplemental] jurisdiction than it does to the explicitly granted power to hear federal claims").

[50] *Id.* at 100 ("[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . This jurisdictional bar applies regardless of the nature of the relief sought").

[51] *Skehan v. State System of Higher Educ.*, 815 F.2d 244, 248 (3d Cir. 1987); *see also O'Hara v. Indiana Univ. of Pa.*, 171 F. Supp. 2d 490, 497 (W.D. Pa. 2001) (finding the Pennsylvania State System of Higher Education "and its fourteen component universities . . . enjoy immunity under the Eleventh Amendment").

[52] *Skehan*, 815 F.2d at 249.

[53] 24 PA. CONS. STAT. § 20-2002-A (1982).

⁵⁴ ECF Doc. No. 83 at ¶ 27-28.

⁵⁵ ECF Doc. No. 85 at 10.

⁵⁶ *Khan v. Educ. Com'n for Foreign Med. Graduates*, No. 00-1701, 2000 WL 1763671, at *1 (E.D. Pa. Nov. 30, 2000) (internal citations omitted).

⁵⁷ *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

⁵⁸ *Jett v. Cheyney State Univ.*, No. 85-0699, 1985 WL 2607, at *2 (E.D. Pa. Sept. 4, 1985); *see* 42 PA. CONS. STAT. § 8521(b) (1980) ("nothing in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States").

⁵⁹ 171 F. Supp. 2d 490, 492 (W.D. Pa. 2001); s*ee also Bartlett v. Kutztown Univ.*, No. 13-4331, 2015 WL 766000, at *12 (E.D. Pa. Feb. 23, 2015) (dismissing plaintiffs' Section 1983 claims because the defendant is protected under the Eleventh Amendment by virtue of its association with Pennsylvania State System of Higher Education and neither of the two exceptions apply); *Seybert v. West Chester Univ.*, 83 F. Supp. 2d 547, 553 (E.D. Pa. 2000) (granting defendant's motion to dismiss because of sovereign immunity due to its affiliation as a Pennsylvania State System of Higher Education university).

⁶⁰ *O'Hara*, 171 F. Supp. 2d at 494.

⁶¹ *Id.*

⁶² *Id.* at 498.

⁶³ *Id.* at 495.

⁶⁴ ECF Doc. No. 83 at ¶ 46.

⁶⁵ *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) ("[W]e conclude that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress's § 5 authority to enforce the guarantees of the Fourteenth Amendment").

⁶⁶ *Koslow v. Pennsylvania*, 302 F.3d 161 (3d Cir. 2002) ("The Commonwealth of Pennsylvania accepted federal financial assistance under SCAAP, and provided these federal funds to the Department of Corrections. Therefore, the Commonwealth of Pennsylvania waived immunity for § 504 claims against its Department of Corrections under the Rehabilitation Act").

⁶⁷ ECF Doc. No. 85 at 14.

⁶⁸ 42 Pa. CONST. STAT § 8542 (1980).

⁶⁹ *Id.* at 777 (citing 62 Pa.C.S. § 1702).

⁷⁰ ECF Doc. No. 83 at ¶ 9.

⁷¹ ECF Doc. No. 85 at 14.

⁷² 42 U.S.C. § 2000a(a).

⁷³ *U.S. v. Lansdowne Swim Club*, 894 F.2d 83, 86 (3d Cir. 1990).

⁷⁴ ECF Doc. No. 85 at 14 (emphasis removed).

⁷⁵ *Id.* (quoting *Daniel v. Paul*, 395 U.S. 298, 307-08 (1969)).

⁷⁶ 305 F. Supp. 2d 271, 279 (E.D.N.Y. 2004).

⁷⁷ *Id.* at 274.

⁷⁸ *Id.*

⁷⁹ *Id.* at 278-79 (citing *Harless v. Darr*, 937 F. Supp. 1351, 1354 (S.D. Ind. 1996)).

⁸⁰ 359 F. Supp. 2d 185, 188 (D. Conn. 2005).

⁸¹ *Id.*

⁸² *Id.* at 188-89.

⁸³ No. 14-618, 2017 WL 6485803, at *12 (W.D. Ky. Sept. 13, 2017), *report and recommendation adopted* 2017 WL 6504012 (W.D. Ky. Sept. 22, 2017).

⁸⁴ *Id.*

⁸⁵ *Id.*

⁸⁶ ECF Doc. No. 83 at ¶¶ 18, 22.

⁸⁷ ECF Doc. No. 83 ¶ 25.

⁸⁸ ECF Doc. No. 83 at ¶ 46.

⁸⁹ ECF Doc. No. 85 at 15.

⁹⁰ 42 U.S.C. § 2000b.

[91] *Davis v. City of Dearborn*, No. 09-14892, 2010 WL 5282015, at *18-19 (E.D. Mich. Dec. 17, 2010) (internal citations removed) (dismissing plaintiff's Title III claim).

[92] ECF Doc. No. 83 at ¶ 46.

[93] *Gilmore v. Amityville Union Free Sch. Dist.*, 305 F. Supp. 2d 271, 279 (E.D.N.Y. 2004) (explaining Title IV "was enacted to remedy the problem of segregation in public schools and colleges").

[94] *Id.*

[95] No. 07-632, 2008 WL 4220062 (D. Del. Sept. 15, 2008).

[96] *Id.* at *1.

[97] *Id.* at *14; *see Cannon v. Univ. of Chicago*, 441 U.S. 677, 724 n.12 (White, J., dissenting).

[98] 42 U.S.C. § 2000c-8; *see also Bedford v. Univ. of Louisville Sch. of Med.*, No. 88-6423, 1989 WL 123143, at *3 (6th Cir. Oct. 19, 1989) (finding "[t]he District Court properly found that § 2000c–8 does not create a separate cause of action, but rather preserves private rights of action under other civil rights acts").

[99] ECF Doc. No. 83 at ¶ 7.

[100] *Id.* at ¶¶ 9, 12, 45.

[101] *Id.* at ¶¶ 10, 11, 39.

[102] *Id.* at ¶¶ 9, 12, 14, 47.

[103] ECF Doc. No. 85 at 13-14.

[104] *CoreStates Bank, N.A., v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

[105] *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. 2009).

[106] No. 12-515, 2013 WL 5298484, at *13 (E.D. Pa. Sept. 19, 2013).

[107] *Id.*

[108] *Id.* at *15.

[109] 955 F. Supp. 2d 390 (M.D. Pa. 2013); *see also Johnson v. Temple Univ.*, No. 12-515, 2013 WL 5298484, at *13 (E.D. Pa. Sept. 19, 2013) (finding the plaintiff's reference to the public university's handbook as a contract failed to establish the existence of a contract).

[110] *Id.* at 395, 397.

[111] *Id.*

[112] *Id.* at 408; See also *Satell v. Temple University*, No. 17-2774, 2017 WL 3158761, at *2 (E.D. Pa. Jul. 25, 2017).

[113] We may allow supplemental jurisdiction over a state law claim if it arises out of the "same case or controversy." 28 U.S.C. § 1367(a). We can decline to hear the state law claim if we dismiss all the federal claims serving as the basis for original jurisdiction. 28 U.S.C. § 1367(c); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). Our Court of Appeals directs "'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Ashton v. City of Uniontown*, 459 F. App'x 185, 192 (3d Cir. 2012) (quoting *Borough of W. Miffin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Even if Mr. Carroll could plead a contract theory, we may also dismiss this breach of contract claim if he fails to state a federal question against the other yet unserved defendants.