**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARTIS C. CARROLL, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  16-1406** |
| | : | |
| **MILLERSVILLE UNIVERSITY OF** | : | |
| **PA,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                              **October 28, 2020**

An African American student at Millersville University disappointed in the way his professors and the university handled his grades and his internal appeals responded in ways leading to criminal charges and a jail sentence.  He *pro se* sued everyone he thought may be possibly involved for civil rights violations in one or more of versions of an amended complaint.  He litigated for awhile and then stopped participating in his case.  We dismissed most of his claims and named defendants earlier this year but allowed him to proceed with due process claims against two of his named parties.  The United States Marshal recently effected service on one of the remaining persons he named, Rebecca Mowery.   Ms. Mowery now moves to dismiss arguing the student does not allege a fact about her, does not seek relief from her, and never mentions her anywhere but the caption.  We agree and grant Ms. Mowery's unopposed motion to dismiss.  The student must plead Ms. Mowery's personal involvement to sustain civil rights claims against her.  As we provided him multiple opportunities to plead claims and he failed to do so, we dismiss his civil rights claims against Ms. Mowery with prejudice.

## I.     Background

### A.     Alleged *pro se* facts

Millersville University accepted African American Artis C. Carroll as a student in July 2011.[1] In Fall 2012, Mr. Carroll enrolled in the Allied Health Technologies – Respiratory Therapy, a program within Millersville's Biology Department.[2] The Allied Health Respiratory Therapy Program (Program) involves, in part, a nineteen-month clinical training at UPMC Pinnacle - Lancaster Regional Medical Center.[3]

A Student Handbook details the Program's dismissal policy: "A student may be dismissed from the Program for: (1) Earning less than a 1.0 average in any program course; (2) Failing to meet the terms of a probation; (3) Demonstrating a level of clinical proficiency which is consistently lower than the acceptable standard of hazardous to patient while on probation; [or] (4) Health, achievement or conduct warranting such action."[4]

The University's Respiratory Therapy Selection Committee interviewed Mr. Carroll around February 2014.[5] The Selections Committee offered Mr. Carroll a position in the Program despite Mr. Carroll's grade point average in science and mathematics courses being below the Program's required 2.50.[6] Mr. Carroll's low grade point average required him to begin participating  in the program "on a probationary status."[7] The Selections Committee explained if Mr. Carroll's science and math grade point average became a "2.50 . . . or better" after the summer 2014 semester, the Department would remove him from probationary status.[8] Mr. Carroll began the clinical aspect of the Program in the Summer 2014 semester.[9] After the Summer 2014 semester, Mr. Carroll had a 2.35 grade point average in science and mathematics courses and a 2.50 over all grade point average.[10]

In the Fall 2014 semester, Mr. Carroll enrolled in six clinical courses.[11] Early in the semester, Mr. Carroll called University Professor Dr. John Hoover and Dean of the Math and Science Department Dr. Robert Smith complaining Director Chrissos and Assistant Director Harleman called him racially charged names, made racist jokes, and gave him the middle finger.[12] In mid-October 2014, Mr. Carroll filed two formal complaints to the University's Executive Director of Human Resources. Mr. Carroll's first complaint related to the alleged discrimination he experienced from Director Chrissos and Assistant Director Harleman.[13] Mr. Carroll's second complaint alleged Dr. Chrissos failed to follow the Respiratory Therapy Program grading scale and denied him access to his student records.[14]

In December 2014, Director Chrissos and Assistant Director Harleman notified Mr. Carroll "he will be subjected to [d]ismissal before final grades are posted with the University Registrar."[15] Mr. Carroll appealed the dismissal to a panel, arguing Director Chrissos failed to follow the Program's grading scale and also arguing Director Chrissos prematurely dismissed him from the Program by not placing him first on probation.[16] The panel affirmed Mr. Carroll's dismissal from the Program.[17]

Later in December, the University released Fall 2014 semester grades indicating a D-minus in Respiratory Assessment,[18] and a D-minus in Therapeutic Care and Clinical Practice 1 for Mr. Carroll.[19] Mr. Carroll alleges he should have received a C in at least one of these courses, but Dr. Chrissos failed to follow the Student Handbook's grading scale resulting in the lower letter grade.[20] Mr. Carroll claims Dr. Chrissos intentionally lowered his grade to a D because she wanted to dismiss Mr. Carroll from the Program.[21] Dr. Chrissos again changed his letter grade, this time from a D to a D-minus, to "cover up" her dismissal of Mr. Carroll from the program without placing

him on probation.[22] Mr. Carroll "notic[ed]" the grade changes when the University's Registrar posted semester grades.[23]

Mr. Carroll contested the D-minus grade to Dean Smith.[24] Dean Smith replied by attaching the three-step grade appeal procedure.[25] Mr. Carroll claims he met the first step of the procedure by going to the clinic to speak with Director Chrissos and Assistant Director Harleman and asking to see his student records.[26] He alleges Director Chrissos refused to speak to him and security escorted him out of the facility.[27] Mr. Carroll claims to have met the second step by visiting with Professor Hoover, Chairman of the Biology Department, who assured Mr. Carroll all grades were correct.[28] Mr. Carroll claims to have met the third step by filing a written appeal with Dean Smith.[29] Dean Smith denied the appeal and assured Mr. Carroll the "Fall 2014 final grades are fair and correct."[30]

The University dismissed Mr. Carroll from the Program but he remained a student on track to graduate with a degree in Liberal Arts in December 2015.[31] In February 2015, Ron Wiafe, Assistant Director of the University's Judicial Affairs, charged Mr. Carroll with violating the student code of conduct for his conduct during the records requests.[32] Mr. Carroll claimed the charges had no evidentiary basis.[33] At a hearing, Assistant Director Wiafe determined Mr. Carroll violated the student code of conduct and required him to attend counseling.[34]

On March 25, 2015, the University held a Family Educational Rights and Privacy Act (FERPA) meeting with Mr. Carroll, Dean Smith, and Professor Hoover.[35] At the meeting, Dean Smith and Professor Hoover gave Mr. Carroll "about half" of the requested documents.[36] Dean Smith informed Mr. Carroll they discovered his D-minus in Respiratory Assessment and Therapeutic Care should have been a D.[37] Dean Smith sent a grade change form to the Registrar's Office and informed Mr. Carroll he could pick up a copy from the Registrar's office.[38] Mr. Carroll

went to the Registrar's office to obtain a copy of the grade change form.[39] Registrar employees Wendy "Doe" and Amnita Breaux informed Mr. Carroll they did not have the form and asked him to leave.[40] Mr. Carroll did not leave until two police officers—Sergeant Jason Flood and Officer Christian Yanak—arrived.[41]

The following day, March 26, 2015, Vice President of Student Affairs Thomas Richardson advised Mr. Carroll the grade change form could be picked up at the Registrar's office.[42] Mr. Carroll returned to the Registrar's office to pick up the grade change form.[43] Registrar employee John Sicotte told Mr. Carroll to leave the building.[44] Mr. Carroll alleges he began to leave.[45] Before Mr. Carroll could leave the building, Sergeant Flood confronted and arrested Mr. Carroll.[46] Sergeant Flood brought Mr. Carroll to the police station and Officer Chanthongthip went to the Registrar's office to investigate.[47] The Officers cited Mr. Carroll for defiant trespass, actual communication to the actor.[48] Deputy Chief Howard Bauman changed the charge to a summary offense—simple trespass with intent to terrorize.[49]

On March 27, 2015, Mr. Carroll attended a meeting with Judicial Affairs Director Lori Austin.[50] Director Austin handed Mr. Carroll three letters.[51] Letters one and two alerted Mr. Carroll of the charges against him from the March 25 and March 26 incidents at the Registrar's office.[52] Letter three—signed by Vice President Richardson—notified Mr. Carroll he would be placed on interim suspension "solely because of what happened at the Registrar's office."[53] Letter three informed Mr. Carroll if he returned to University property he would be charged with trespassing.[54] Mr. Carroll denies wrongdoing and claims the letters did not allege facts supporting the discipline.[55] Mr. Carroll protested the suspension by remaining on the University's campus.[56] Four days after receiving the suspension and no trespass order, he was arrested and charged with defiant trespass, actual communication to actor.[57] Director Austin suspended Mr. Carroll until

Spring 2016.[58] Mr. Carroll contested the March 26 and March 31 misdemeanor trespass charges during a jury trial in the Court of Common Pleas for Lancaster County.[59] The jury acquitted Mr. Carroll of the March 26 charge but found him guilty of the March 31 charge for defiant trespass. Judge Totaro imposed a one-year prison sentence.[60]

### B.   Procedural History

In March 2016, Mr. Carroll sued Lancaster County and the University. Mr. Carroll plead he submitted an unanswered complaint to the University alleging racial discrimination, his instructors denied him access to his student records, the University suspended him without a hearing, and University officers arrested him unlawfully.[61] Mr. Carroll alleged violations of the First, Fifth, Sixth, and Fourteenth Amendments, The Family Educational Rights and Privacy Act, fraud, false imprisonment, defamation, and discrimination.[62] Judge Stengel dismissed Mr. Carroll's claims against Lancaster County and ordered service on the University.[63]

On March 17, 2017, Mr. Carroll filed an amended complaint suing the University and twelve Defendants: Director Chrissos, Assistant Director Harleman, Professor Hoover, Dean Smith, Assistant Director Wiafe, Vice President Richardson, Director Austin, Registrar Breaux, Former University President John Anderson, Jonathan Klapper-Lenehan, University Vice President Brian Hazlett, and UPMC – Lancaster Regional Medical Center.[64] It appears Mr. Carroll never served the twelve new Defendants.

In April 2017, the University moved to dismiss.[65] Judge Stengel denied and allowed Mr. Carroll the opportunity to file a second amended complaint. Judge Stengel explained this newly amended complaint would be the last amended complaint.[66] Chief Judge Juan Sanchez reassigned the case from Judge Stengel to Judge Joseph Leeson.[67] Mr. Carroll failed to file his second amended complaint by the ordered deadline and the University moved to dismiss.[68] Judge Leeson

denied the University's motion without prejudice and set a new filing deadline for Mr. Carroll's second amended complaint.[69] Chief Judge Sanchez reassigned the case to us.[70] We gave Mr. Carroll another extension to file his second amended complaint.[71] Mr. Carroll failed to file the second amended complaint by our deadline and the University moved to dismiss.[72] We denied the University's motion to dismiss and gave Mr. Carroll one "last chance" to file an amended complaint.[73] We placed our case on suspense while Mr. Carroll appealed a separate issue relating to counsel representation.[74] Our Court of Appeals dismissed his appeal.[75]

We then gave Mr. Carroll a fourth "last chance" to file a second amended complaint.[76] In May 2019, Mr. Carroll filed his second amended complaint.[77] In his second amended complaint, Mr. Carroll is suing the same thirteen Defendants from the first amended complaint and adds twelve new Defendants: Registrar employees Sicotte, Hutchinson, and Wendy "Doe," Deputy Chief Bauman, Officers Stuchkus, Yanak, and Chanthongthip, Sergeant Flood, Craig Stedman, Andrew Gonzalez, Tricia Boyd, and Rebecca Mowery.[78] In total, Mr. Carroll's second amended complaint sues twenty-three individuals, sued in their individual and official capacities, UPMC – Lancaster Regional Medical Center, and the University.

Mr. Carroll states seven causes of action in his second amended complaint:

- "Count I Deprivation of Liberty and Property without Due Process of Law pursuant [to] 42 U.S.C. § 1983 Civil Action for Deprivation of Rights against Millersville University, Lori Austin, Ron Wiafe, and Thomas Richardson."[79]

- "Count [II] Deprivation of Liberty and Property without Due Process of Law pursuant [to] Title 42 U.S.C. § 1983 Civil Action for Deprivation of Rights against Lori Austin;"[80]

- "Count [III] Deprivation of Liberty and Property without Due Process of Law pursuant [to] Title 42 U.S.C. § 1983 Civil Action for Deprivation of Rights against Elaine Chrissos;"[81]

- "Count [IV] Breach of Contract against Elaine Chrissos, Jarrod Harleman, and John Hoover;"[82]

7

- "Count [V] False Arrest and False Imprisonment against Christian Yanak, Richard Stuchkus, and Jason Flood;"[83]

- Count [VI] Breach of Contract against Elaine Chrissos, Jarrod Harleman, Millersville University, UPMC, and John Hoover and Robert Smith;"[84]

- Count [VII] Violation of Civil Rights Act of 1964 Title II 201(a), 203(c), Title III and Title IV against Millersville University, Alison Huncthington [sic], Wendy Doe, John Sicotte, Lori Austin, Ron Wiafe, and Thomas Richardson."[85]

The University moved to dismiss the claims asserted against it.[86] We dismissed the University, as sovereign immunity barred Mr. Carroll's claims against the University; and, even if sovereign immunity did not bar these claims, Mr. Carroll failed to state a claim against the University for breach of contract or under the Civil Rights Act of 1964.[87]

As for the non-University Defendants, shortly after Mr. Carroll filed the second amended complaint, we ordered the Clerk of Court issue a summons and directed Mr. Carroll to "complete USM-285 forms so the [United States] Marshals can serve these Defendants."[88] In August 2019, the Marshals returned the summonses unexecuted because Mr. Carroll never delivered the USM-285 forms.[89] We ordered Mr. Carroll to show cause in a memorandum as to "why we should not dismiss this case against these remaining parties for failure to prosecute."[90] Mr. Carroll timely explained he believed he "timely responded" when he filed a "Motion for Service" in May 2019 identifying the names and addresses of all Defendants.[91] Mr. Carroll also stated he sent the USM-285 forms to the Marshals in late August.[92] The Marshals confirmed they received the USM-285 forms. We ordered the Clerk of Court re-issue summonses and directed the Marshal serve the summonses and second amended complaint upon all unserved Defendants.

In November 2019, Defendants John Anderson, Lori Austin, Howard Bauman, Phoulideth Chanthongthip, Jason Flood, Brian Hazlett, John Hoover, Alison Hunchthington, Thomas Richardson, John Sicotte, and Richard Stuchkus moved to dismiss for failure to state a claim.[93] On

November 26, 2019, Mr. Carroll moved for an extension of time to respond to the Defendants motion to dismiss.[94] We granted Mr. Carroll's motion for extension of time to respond.[95] On December 2, 2019, Defendant Robert Smith moved to dismiss for failure to state a claim.[96] One week later, Mr. Carroll again moved for an extension of time.[97] We granted Mr. Carroll a "final extension" to respond to Defendants' motions to dismiss.[98] In January 2020, Defendants Aminta Breaux and Ron Wiafe moved to dismiss for failure to state a claim. [99]

On February 14, 2020, we dismissed Former University President Anderson, Student Affairs Vice President Hazlett, Professor Hoover, Deputy Chief Bauman, Sergeant Flood, Officers Stuchkus and Chanthongthip, Registrars Sicotte and Breaux, Retired Dean Smith, Assistant Director Wiafe, and Registrar Hutchinson.[100] We denied Director Austin's and Vice President Richardson's motion to dismiss Mr. Carroll's due process claims against them. We granted Director Austin's and Vice President Richardson's motion to dismiss for all other claims brought against them.[101]

As we explained, Mr. Carroll did not allege facts about President Anderson or Vice President Hazlett, nor did he name them in his "Statement of Claims."[102] Mr. Carroll also failed to state claims against Deputy Chief Bauman, Officer Chanthongthip, and Registrar Breaux.[103] We found Mr. Carroll cannot sue President Anderson, Vice President Hazlett, Deputy Chief Bauman, Officer Chanthongthip, and Registrar Breaux without stating facts or legal claims against them. We dismissed these Defendants with prejudice.[104]

We found Professor Hoover, Vice President Richardson, Director Austin,  Sergeant Jason Flood, Officer Stuchkus, Registrar Sicotte, Dean Smith, and Assistant Director Wiafe were University employees, and therefore entitled to sovereign immunity for Mr. Carroll's claims against them in their official capacities.[105] We found Mr. Carroll failed to state a claim for breach

of contract against Professor Hoover and Dean Smith because the Respiratory Therapy Program's Student Handbook is not a contract.[106]

Mr. Carroll also failed to state a claim under the Civil Rights Act of 1964 against Director Austin, Registrar Sicotte, Assistant Director Wiafe, Vice President Richardson, and Registrar Hutchinson.[107] Mr. Carroll's claim under Title II of the Act failed because Mr. Carroll did not allege facts showing the space in the University where he suffered harm is a place of public accommodation.[108] Mr. Carroll's claim under Title III of the Act failed because no private citizen can bring a private claim under Title III.[109] Mr. Carroll's claim under Title IV of the Act failed because Title IV requires a plaintiff allege facts related to segregation, and Mr. Carroll fails to allege those facts.[110] Mr. Carroll's claim also failed under Title IV because Title IV does not provide a separate cause of action.[111]

We determined Mr. Carroll's false arrest and false imprisonment claims against Sergeant Flood and Officer Stuchkus are time barred by the statute of limitations because these claims alleged in the second amended complaint did not relate back to the original complaint.[112] We found Pennsylvania law did not bar Mr. Carroll's due process claims against Director Austin, Assistant Director Wiafe, and Vice President Richardson because the claims arose out of the conduct, transaction, or occurrence plead in the first amended Complaint.[113]

We concluded Mr. Carroll adequately plead a due process claim against Director Austin and Vice President Richardson, but failed to plead a due process claim against Assistant Director Wiafe.[114] We explained Mr. Carroll's claim against Assistant Director Wiafe failed because Assistant Director Wiafe did not deprive Mr. Carroll of any property right in requiring Mr. Carroll to receive counseling.[115] Assistant Director Wiafe also provided Mr. Carroll with written notice and held a hearing on the charges against Mr. Carroll.[116] Mr. Carroll adequately plead a due

process claim against Director Austin and Vice President Richardson because Defendants did not satisfy the minimum level of due process as defined in *Goss*.[117] Director Austin and Vice President Richardson did not properly recite the standard for qualified immunity against Mr. Carroll's due process claim.[118] And we determined *Heck v. Humphrey* would not bar Mr. Carroll's due process claim because his success in the Section 1983 civil suit would not necessarily imply the invalidity of his defiant trespass conviction.[119]

## II.   Analysis

Mr. Carroll sues Rebecca Mowrey in his second amended Complaint. But Mr. Carroll does not allege facts about Ms. Mowrey, mention Ms. Mowrey in his "Statement of Claims," or mention Ms. Mowrey in his "Demand for Relief." Ms. Mowrey moves to dismiss with prejudice.[120] She argues Mr. Carroll cannot name her as a Defendant without Mr. Carroll alleging facts showing her personal involvement. We agree. Mr. Carroll fails to state factual allegations against Rebecca Mowrey.

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[121] In a civil rights action, a plaintiff must allege the defendant has "personal involvement in the alleged wrongs."[122] Personal involvement may be established "through allegations of personal direction or of actual knowledge and acquiescence."[123] In *Wells v. Varner*, plaintiff alleged *Brady* violations, and Fourteenth and Sixth Amendment violations.[124] Judge Leeson dismissed the complaint after finding plaintiff's claims not cognizable under the civil rights laws. Judge Leeson found the claims failed as a matter of law because the only place the defendant's name appeared is in the caption of the case and there is no pleading of defendant's personal involvement in the alleged wrongdoing.[125] In *Goode v. Lackawanna Cty. Prison*, Judge Munley dismissed a complaint with leave to amend because "the

complaint is devoid of any allegations against [defendant]. In fact, the only place his name appears

is in the caption. Because [plaintiff] fails to allege that [defendant] was personally responsible for

the alleged denial of his constitutional rights, the complaint against him is subject to dismissal."[126]

Mr. Carroll fails to plead Ms. Mowrey's personal  involvement in the alleged conduct. Mr.

Carroll has not plead a fact or claim against Ms. Mowrey. He does not mention her name in the

body of his complaint or in his "Statement of Claims." He does not seek monetary damages from

Ms. Mowrey under "Demand for Relief." This is similar to *Wells* and *Goode,* where state actors

could not be personally involved when their names appeared only in the case caption and plaintiff

alleged no facts about them. Ms. Mowery cannot be personally involved if Mr. Carroll pleads no

facts against her and only lists her as a Defendant in the caption.

We previously dismissed Defendants President Anderson and Vice President Hazlett. We

did not allow Mr. Carroll to amend his complaint for a fourth time to plead a cause of action against

the dismissed defendants. Ms. Mowrey argues our rationale in dismissing President Anderson and

Vice President Hazlett with prejudice applies to her as well. We agree. As we explained in our

February 14, 2020 memorandum, we allowed Mr. Carroll numerous chances to amend his

complaint. We gave Mr. Carroll a "fourth last chance" to file a second amended complaint, which

he filed on May 6, 2019. There is no basis to allow Mr. Carroll another attempt to state a claim

against Ms. Mowrey for events occurring in Fall 2014 and Spring 2015. We dismiss with prejudice.

**III.    Conclusion**

We grant Ms. Mowery's motion to dismiss because Mr. Carroll failed to state a claim

against her. Mr. Carroll does not mention Ms. Mowery once in the body of his second amended

Complaint, including in his "Statement of Claims" section and "Demand for Relief" section. We

dismiss Ms. Mowery with prejudice as we afforded Mr. Carroll multiple opportunities to amend and he chose not to amend.

---

[1] ECF Doc. No. 83 at 4.

[2] *Id*. at 5.

[3] ECF Doc. No. 17-1 at 5.

[4] ECF Doc. No. 17-1 at 3-16.

[5] *Id*. at 13.

[6] *Id*. at 2.

[7] *Id*.

[8] *Id*.

[9] ECF Doc. No. 83 at 7.

[10] *Id*. at 8.

[11] ECF Doc. No. 17-1 at 40.

[12] ECF Doc. No. 83 at 6, 9, 16.

[13] ECF Doc. No. 17-1 at 17.

[14] ECF Doc. No. 83 at 9.

[15] *Id*. at 10.

[16] *Id*. at 10-12.

[17] *Id*. at 11.

[18] *Id*. at 12.

[19] ECF Doc. No. 17-1 at 39.

[20] ECF Doc. No. 83 at 12.

[21] *Id*.

[22] *Id.*

[23] *Id.* at 13.

[24] *Id.*

[25] *Id.* at 13, 14-16.

[26] *Id.* at 14.

[27] *Id.*

[28] *Id.* at 15.

[29] *Id.*

[30] *Id.* at 16.

[31] *Id.* at 17.

[32] *Id.*; ECF Doc. No. 17-3 at 13-14; ECF Doc. No. 83 at 16-17.

[33] ECF Doc. No. 83 at 17.

[34] *Id.*

[35] *Id.* at 16, 18.

[36] *Id.* at 18.

[37] ECF Doc. No. 17-1 at 39-40.

[38] ECF Doc. No. 83 at 18.

[39] *Id.* at 20.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 21, 28.

[43] *Id.* at 21.

[44] *Id.*

[45] *Id*. at 22.

[46] *Id*.

[47] *Id*.

[48] *Id*.

[49] *Id*. at 23.

[50] *Id*.

[51] *Id*.

[52] *Id*.

[53] *Id*.

[54] *Id*.

[55] *Id*.

[56] *Id*. at 24.

[57] *Id*. at 25.

[58] *Id*. at 35.

[59] *Commonwealth of Pennsylvania v. Carroll,* 88 MDA 2016, CP-36-CR-1537-2015 (Pa. Super. 2016). Our Court of Appeals has directed "a prior judicial opinion constitutes a public record of which a court may take judicial notice." *M & M Stone Co. v. Pennsylvania,* 388 F. App'x 156, 162 (3d Cir. 2010). When taking judicial notice of a prior judicial opinion, we may not examine the trial transcripts or assess the validity of the facts in the opinion. *Id.* But we may consider the legal conclusions reached by the court in the earlier opinion. *Id* ("Without considering the underlying factual analyses by the EHB and Commonwealth Court for their truth, and instead simply acknowledging the EHB and Commonwealth Court's conclusions, the District Court properly [took judicial notice]").

[60] *Carroll,* 88 MDA 2016.

[61] *Id*. at 3.

[62] *Id*. at 2.

[63] ECF Doc. No. 2.

[64] ECF Doc. No. 17.

[65] ECF Doc. No. 18; ECF Doc. No. 46 at n. 1.

[66] ECF Doc. No. 46 at n. 1.

[67] ECF Doc. No. 51.

[68] ECF Doc. No. 52.

[69] ECF Doc. No. 59.

[70] ECF Doc. No. 65.

[71] ECF Doc. No 66.

[72] ECF Doc. No. 69.

[73] ECF Doc. No. 74.

[74] ECF Doc. No. 78.

[75] ECF Doc. No. 81.

[76] ECF Doc. No. 82.

[77] ECF Doc. No. 83.

[78] ECF Doc. No. 83.

[79] ECF Doc. No. 83 at 27.

[80] *Id*. at 33.

[81] *Id*. at 36.

[82] *Id*. at 38.

[83] *Id*. at 40.

[84] *Id*. at 44.

[85] *Id*. at 46.

[86] ECF Doc. No. 85.

[87] ECF Doc. No. 86 at 4-10.

[88] ECF Doc. No. 84 at 1.

[89] ECF Doc. No. 93.

[90] ECF Doc. No. 94.

[91] ECF Doc. No. 95 at 13.

[92] *Id.*

[93] ECF Doc. No. 99.

[94] ECF Doc. No. 101.

[95] ECF Doc. No. 102.

[96] ECF Doc. No 103.

[97] ECF Doc. No. 104.

[98] ECF Doc. No. 105.

[99] ECF Doc. No. 107.

[100] ECF Doc. No. 109 at 11.

[101] *Id*. at 38.

[102] *Id*. at 11.

[103] *Id*. at 12.

[104] *Id.*

[105] *Id.*

[106] *Id*. at 15.

[107] *Id*. at 15-17.

[108] *Id*. at 16.

[109] *Id.*

110 *Id*. at 17.

111 *Id*.

112 *Id*. at 20.

113 *Id*. at 26.

114 *Id*. at 27.

115 *Id* at 29.

116 *Id*.

117 *Id*. at 31.

118 *Id*. at 35.

119 *Id*. at 38 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("Where a plaintiff seeks damages relating 'to a conviction or sentence that has not been so invalidated,' the plaintiffs civil rights claim 'is not cognizable under [Section] 1983'")).

120 When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC,* 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal,* 556 U.S. at 675, 679).

121 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

122 *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988).

123 *Id*. at 1207.

124 *Wells v. Varner*, No. 15-35, 2016 WL 1449247, at *3 (E.D. Pa. Apr. 13, 2016).

18

[125] *Id.*

[126] *Goode v. Lackawanna Cty. Prison*, No. 16-183, 2016 WL 688061, at *2 (M.D. Pa. Feb. 19, 2016).