**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARTIS C. CARROLL, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  16-1406** |
| | : | |
| **THOMAS RICHARDSON and** | : | |
| **LORI AUSTIN** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                          **July 29, 2021**

Artis C. Carroll, Jr. challenges Millersville University's and its officials' decision to suspend him based on poor grades and alleged misconduct eventually resulting in disputed criminal charges in state court. We narrowed several of his pro se claims before discovery in extensive opinions.  We allowed a due process claim against two University employees to proceed through discovery even though he did not brief the issues. We allowed Mr. Carroll to adduce evidence in support of his largely conclusory due process claim against these two employees based on a plead established property interest in a continuing course of university study and he plead facts allowing us to plausibly infer two University officials denied him due process without sufficient notice or an opportunity to be heard before the University suspended him.  Discovery began and he failed to appear for court-ordered depositions. Our exhaustive review of the adduced discovery confirms there are no genuine issues of material fact as to the University officials' entitlement to qualified immunity. The University employees move for summary judgment.  Mr. Carroll once again chose not to respond after two extensions of time to do so.  Our exhaustive review of the adduced discovery confirms the University employees are entitled to qualified immunity and Mr. Carroll cannot proceed under the Eleventh Amendment as he states no claim for prospective relief. We enter summary judgment in favor of the University's employees.

I.    **Adduced facts.**[1]

Millersville University dismissed Artis C. Carroll from its Respiratory Therapy program in December 2014 citing repeated poor grades.  Mr. Carroll believed the University acted unjustly. He made several attempts to right this perceived wrong in a manner the University officials and law enforcement viewed as inappropriate.  This case involves conduct after the University dismissed him, beginning with the adjudication of one of the harassing and disorderly conduct charges against Mr. Carroll in February 2015.

*Assistant Director Wiafe places Mr. Carroll on probation in February 2015.*

Mr. Carroll sought to dispute his poor grades and appeal his termination from the Respiratory Therapy program in early 2015.  He contacted multiple University officials and requested to see his records.  His repeated contact with University officials ultimately led Assistant Director of Judicial Affairs Ron Wiafe to charge Mr. Carroll with "disorderly, harassing, and inappropriate behavior" in violation of the Student Code of Conduct.[2]

Mr. Carroll met with Assistant Director Wiafe on February 28, 2015 to discuss the charges.[3]  During his meeting with Assistant Director Wiafe, Mr. Carroll informed Assistant Director Wiafe he would not participate in a hearing regarding his conduct unless he could record the hearing.[4]  Assistant Director Wiafe informed Mr. Carroll the University would not allow him to record the hearing, but Mr. Carroll should nevertheless participate because the hearing would be more effective with his participation.[5]  Assistant Director Wiafe further informed Mr. Carroll he would reach a decision on the charges against him.[6]  Despite these warnings, Mr. Carroll elected not to participate, and Assistant Director Wiafe found Mr. Carroll responsible for violating provisions of the Student Code of Conduct prohibiting conduct threatening the welfare of others,

harassing conduct, disorderly conduct, and disrupting scheduled University programs and activities.[7]

Assistant Director Wiafe placed Mr. Carroll on probation effective February 26, 2015 through May 26, 2015 and ordered him to make an appointment at the Center for Counseling and Human Development by March 6, 2015 for an evaluation and treatment recommendation.[8]  He told Mr. Carroll to sign a release so the counselors could update Assistant Director Wiafe on Mr. Carroll's progress.[9]  Assistant Director Wiafe informed Mr. Carroll, "[a]ny further violations of the Student Code of Conduct may result in more serious sanctions, up to and including expulsion from the University."[10]  He also informed Mr. Carroll of his right to request an appeal of the decision by submitting an appeal request form to the Office of Judicial Affairs within five business days.[11]

Mr. Carroll also met with Thomas Richardson, the Assistant Vice President for Student Affairs on February 26, 2015 to discuss Mr. Carroll's displeasure with the academic appeal process and his desire to return to the Respiratory Therapy program.[12]  Before their meeting, Assistant Vice President Richardson learned Mr. Carroll contacted the Office of the President and the Provost to complain about the appeal process.[13]  Assistant Vice President Richardson instructed Mr. Carroll to direct all future questions or comments regarding the appeals process to Assistant Vice President Richardson alone.[14]  He further advised Mr. Carroll, "any additional communications to other Millersville University offices or persons regarding this matter may be perceived as disruption to university business and harassment and may be subject to judicial proceedings."[15]

Ignoring Assistant Vice President Richardson's instructions, Mr. Carroll contacted three Millersville University officials on February 26, 2015 about his appeal and his desire to return to

the program.[16]  Assistant Vice President Richardson, hearing of Mr. Carroll's decision not to heed his warnings, notified the Office of Judicial Affairs of Mr. Carroll's conduct and wrote to inform Mr. Carroll of his decision.[17]  He once again instructed Mr. Carroll "to cease and desist any communication to any Millersville University office or community member other than myself" and again advised, "[f]ailure to follow this directive will be seen as disruption of university business and harassment and subject to further university judicial proceedings."[18]

Mr. Carroll appealed Assistant Director Wiafe's decision putting him on probation to Lori Austin, the Director of Judicial Affairs, on March 7, 2015.[19]  Director Austin reviewed Mr. Carroll's appeal, and found his case did "not meet the criterial for an appeal" because Mr. Carroll refused to participate in the hearing, which prevented the Office of Judicial Affairs from hearing his side of the story.[20]  She advised him to attend any future hearings "to tell [his] side of the story and allow [the University's] process to work to better serve [him]."[21]

### Mr. Carroll's March 25, 2015 incident.

A few weeks later on March 25, 2015 while still on probation for the February 14, 2015 incident, Mr. Carroll appeared at the Registrar's Office to air grievances about his dismissal from the Respiratory Therapy program.[22]  An employee at the Registrar's Office repeatedly asked Mr. Carroll to leave, and when he refused, called the Millersville University Police Department.[23] University Police Officer Yanak radioed Lancaster County Wide Communications, and both Officer Yanak and Sergeant Flood went to the Registrar's Office.[24]  Officer Yanak and Sergeant Flood arrived and observed Mr. Carroll arguing loudly with the Registrar staff and recording his interaction with them.[25]  Officer Yanak asked for Mr. Carroll's identification, and after refusing to provide it several times, Mr. Carroll eventually gave Officer Yanak a non-driver identification

card.[26]   Officer Yanak ran Mr. Carroll's information and discovered he had four outstanding warrants for his arrest for driving violations.[27]

After some time, the officers convinced Mr. Carroll to accompany them to the lounge where they could speak privately.[28]   Officer Yanak describes Mr. Carroll as "rambling on and on about the same thing, his grades," "going on and on about FERPA," telling them he has legal representation, and complaining about Assistant Vice President Richardson."[29]   Sergeant Flood told Mr. Carroll several times to "contact [Assistant Vice President] Richardson . . . and speak to him before he comes back to the [Registrar's] office" and advised him if he returned without Assistant Vice President Richardson's approval, "he would be arrested for Trespassing."[30]   Mr. Carroll replied, "I'm coming back."[31]

### Mr. Carroll's March 26, 2015 incident.

Officer Yanak informed Director Austin of the incident at the Registrar's Office, and the following day Director Austin emailed Mr. Carroll to inform him he faced charges for violating provisions of the University's Student Code of Conduct by engaging in harassing and disorderly conduct, failing to comply with directions given by law enforcement, and creating excessive noise or commotion.[32]   Director Austin informed him the Office of Judicial Affairs would afford him a hearing in accordance with the rules outlined in the Student Code of Conduct.[33]   She informed him the hearing would occur on Friday April 3, 2015 at 9:30 a.m. and provided the hearing's location.[34] She further informed him failing to attend the hearing would result in a one-hundred dollar fine and adjudication without his input.[35]   She provided her phone number and advised him to call her if he needed to change the hearing date.[36]

Mr. Carroll replied to Director Austin's email to provide his side of the story.[37]   Director Austin told Mr. Carroll she was available at 2:00 p.m. if he wanted to meet in person.[38]   At

5

2:45p.m., Mr. Carroll came to Director Austin's office.[39]   As he was forty-five minutes late for their meeting, she told him she did not have much time to talk to him.[40]   Director Austin asked Mr. Carroll to return the following day and told him they could speak to the Registrar's Office together then.[41]   She reminded him he would be arrested if he went to the Registrar's Office on his own.[42]

Mr. Carroll went to the Registrar's offices as soon as he left Director Austin's office despite Director Austin's, Officer Yanak's, and Sergeant Flood's warning he would be arrested if he went back there.[43]   Again, the staff at the Registrar's Office called the police, and this time, they arrested Mr. Carroll for trespassing.[44]   Sergeant Flood and Officer Yanak both contacted Director Austin to inform her of the events.

### Director Austin and Assistant Vice President Richardson place Mr. Carroll on interim suspension.

Director Austin contacted Assistant Vice President Richardson to notify him of the situation and recommend they place Mr. Carroll on interim suspension.[45]   She reasoned Mr. Carroll's escalating behavior disrupted and interfered with the University's operations.[46]

The Millersville University Student Handbook outlines the requirements for imposing an interim suspension.[47]   The handbook provides, "[p]ending final action on charges of violating the Student Code of Conduct, the student may be subject to immediate suspension or loss of privileges" if the "Vice President of Student Affairs or [his] designee" determines "the student's presence on campus may constitute a threat to the health, safety and welfare of the University community."[48]   It also provides, "a student may be placed on interim suspension if the student poses an ongoing disruption of, or interference with, the normal operations of the University."[49] The handbook further provides the procedures surrounding interim suspension, explaining "[i]f a student is placed on Interim suspension, an Administrative hearing will be scheduled within ten class days to determine a final sanction."[50]   The University reserved the right to extend this time

period for "exceptions based on the health and/or mental health concerns that may impede the student['s] ability to effectively participate on his/her[ ] behalf."[51]

Assistant Vice President Richardson signed a letter informing Mr. Carroll of the interim suspension.[52]  The letter explained the suspension resulted from Mr. Carroll's conduct at the Registrar's office on March 25, 2015 and his return to the Registrar's office on March 26, 2015.[53] The letter told Mr. Carroll he was "banned from [the University's] campus" until he received permission to enter.[54]  The letter further informed Mr. Carroll he would "be notified in writing to make an appointment for an administrative hearing regarding the charges in this case in the near future," and directed him to the Office of Judicial Affairs' website for more information on the process.[55]  Assistant Vice President Richardson left it to Director Austin to decide whether she would give the letter to Mr. Carroll and effectuate the interim suspension after her meeting with him.[56]

Director Austin met with Mr. Carroll on March 27, 2015.  Director Austin had the letter from Assistant Vice President Richardson as well as two letters she wrote describing the charges against him and informing him of his rights.  The first letter described the incident occurring on March 25, 2015, outlined the charges against Mr. Carroll in relation to the incident, and informed Mr. Carroll the Office of Judicial Affairs would hold a hearing on Friday, April 3, 2015.[57]  The second letter described the incident occurring on March 26, 2015, outlined the charges against Mr. Carroll in relation to the incident, and informed him the Office of Judicial Affairs would hold a hearing on Friday, April 3, 2015.[58]

Director Austin gave Mr. Carroll all three letters at this meeting.[59]

### *Mr. Carroll's March 27 and March 31, 2015 incidents.*

Due to the no trespass order, Officer Yanak sought to escort Mr. Carroll off campus premises from the meeting with Director Austin.[60]  Mr. Carroll told Officer Yanak he would not leave and planned to "continue to go to class and the computer room."[61]  Officer Yanak told Mr. Carroll he had to leave because of the trespass order, and Mr. Carroll said, "Go ahead, lock me up, I'm staying right here, I'm not leaving."[62]  Officer Yanak tried to get Mr. Carroll to leave, and when he continued to refuse, Officer Yanak called for backup and the officers placed Mr. Carroll under arrest for trespassing.[63]

### *Director Austin sends Mr. Carroll notice of his April 15, 2015 hearing.*

Director Austin received word Mr. Carroll had been arrested and remained incarcerated awaiting an April 8, 2015 criminal hearing and expected release.[64]  Director Austin wrote Mr. Carroll two letters dated April 9, 2015.  In the first letter, Director Austin informed him of the charges against him related to the March 27th incident..[65] In the second letter, Director Austin informed Mr. Carroll of the charges against him related to the March 31st incident.[66] Both letters informed Mr. Carroll the Judicial Affairs officer would hold a hearing on April 15, 2015.[67] Director Austin also wrote "All of your cases will be heard during this meeting" in the first letter to explain to Mr. Carroll his hearing for charges related to the March 25th and March 26th incidents would also occur on April 15, 2015 given his inability to appear at the scheduled April 3, 2015 hearing due to his incarceration.[68]

Director Austin sent these letters to Mr. Carroll by email and received an electronic notice on April 10, 2015 he opened the emails.[69]

*Director Austin temporarily suspends Mr. Carroll.*

Mr. Carroll failed to appear for his April 15, 2015 hearing.[70]  Director Austin reviewed the evidence against Mr. Carroll without the benefit of his testimony.[71]

For the March 25th incident, she found him responsible for violating provisions of the Student Code of Conduct prohibiting harassing conduct, disorderly conduct, failing to comply with directions given by law enforcement officers, creating excessive noise or commotion, unlawful conduct, and failing to appear when directed to do so by the Vice President for student Affairs or the Judicial Affairs Director.[72]  She wrote a letter describing her findings and wrote "Due to the fact that all 4 outstanding cases are being heard at the same time, please see case number 2014059901 [the March 31st incident] for sanctions from all these cases combined."[73]  She also informed Mr. Carroll he may appeal within five business days following the hearing officer's decision and provided instructions on how to appeal.[74]

For the March 26th incident, she found him responsible for violating provisions of the Student Code of Conduct prohibiting failing to comply with directions given by law enforcement officers, trespassing, creating excessive noise or commotion, unlawful conduct, and failing to appear when directed to do so by the Vice President for Student Affairs and the Judicial Affairs Director and when charged with a violation of the Student Code of Conduct.[75]  She wrote a letter describing her findings, referring him to case number 2014059901 [the March 31st incident] for the sanctions for all four cases combined, and explaining his appeal rights.[76]

For the March 27th incident, she found him responsible for violating provisions of the Student Code of Conduct prohibiting disorderly conduct, failing to comply with directions given by law enforcement officers, receiving a citation after being arrested for trespass, failing to comply with a sanction imposed by the Judicial Affairs Director or the Vice President for Student Affairs,

and failing to appear when directed to do so by the Vice President for Student Affairs or the Judicial Affairs Director and when charged with a violation of the Student Code of Conduct.[77]   Again, she wrote a separate letter describing her findings, referred him to case number 2014059901 [the March 31st incident] for the sanctions for all four cases combined, and explained his appeal rights.[78]

For the March 31st incident, she found Mr. Carroll responsible for violating provisions of the Student Code of Conduct prohibiting getting arrested for trespassing, failing to comply with a sanction, failing to comply with directions given by law enforcement officers, and failing to appear for the hearing.[79]

In the letter regarding the March 31st incident, Director Austin provided the sanctions for the March 25th, March 26th, March 27th, and March 31st incidents combined.[80]   Director Austin suspended Mr. Carroll from the University, effective April 17, 2015 through December 31, 2015.[81] She also set several conditions on Mr. Carroll's re-enrollment in Spring 2016.[82]   She required Mr. Carroll to make an appointment for a mental health assessment with a provider of his choice and to sign a release allowing the school to monitor his progress.[83]   She also required him to pay a one-hundred dollar fine for failing to appear at his hearing.[84]   She restricted him from entering campus without permission.[85]   Finally, she issued a "sanction of deferred expulsion," meaning any new misconduct would result in his immediate expulsion.[86]

Director Austin sent all four letters to Mr. Carroll by email and received an electronic notice when he opened the email on April 17, 2015.[87]   She also sent him the letter by certified mail, and he signed his receipt of the letter on April 22, 2015.[88]

Mr. Carroll emailed Director Austin his appeal on Wednesday, April 29, 2015 – ten business days after the hearing, eight days after Mr. Carroll opened the email, and five days after

he signed the certified mail receipt.[89]  She replied, "I believe the time period for appeal is well over by now" and declined to consider his appeal.[90]

### *Mr. Carroll sues several persons and proceeds into discovery against Assistant Vice President Richardson and Director Austin.*

Mr. Carroll sued several Millersville University officials under a variety of theories on April 1, 2016.  We dismissed all claims against all defendants except for the procedural due process claims against Assistant Vice President Richardson and Director Austin regarding Mr. Carroll's interim suspension on March 27, 2015 and temporary suspension on April 17, 2015.  We found Mr. Carroll had a clearly established property interest in continuing his course of study, and the facts alleged, taken as true, supported the inference Assistant Vice President Richardson and Director Austin denied Mr. Carroll due process by giving him insufficient notice and the opportunity to be heard before imposing the interim and temporary suspensions.[91]

We repeatedly extended discovery to afford Mr. Carroll an opportunity to participate in discovery.  He repeatedly failed to respond for discovery and twice failed to appear for his scheduled depositions.  Assistant Vice President Richardson and Director Austin moved for sanctions, and after holding a hearing, we granted the motion for sanctions and ordered Mr. Carroll "precluded from adducing evidence in his case-in-chief as to the Defendants' alleged denial or process available to him."[92]  We informed Mr. Carroll he could cure this sanction if he responded to the outstanding requests for admission and production of documents and appeared for a deposition to be held between May 17 and May 20, 2021.[93]

Assistant Vice President Richardson and Director Austin scheduled a deposition for May 19, 2021 and told Mr. Carroll they would cancel the deposition if he failed to confirm his intent to participate by May 12, 2021.  When Mr. Carroll did not confirm his intent to participate, Assistant Vice President Richardson and Director Austin cancelled the deposition.  Assistant Vice President

Richardson and Director Austin rescheduled Mr. Carroll's deposition for June 14, 2021. Mr. Carroll again failed to attend. Mr. Carroll knows of this case; he repeatedly moves for extensions and argues the underlying merits of the criminal charges or seeks stays.[94]  He just elects not to participate in the discovery phase of this case he filed over six years ago.

## II.    Analysis[95]

Director Austin and Associate Vice President Richardson now move for summary judgment, arguing Mr. Carroll does not have a property interest in continuing his education, Mr. Carroll received due process, and qualified immunity shields the defendants from liability. Director Austin and Vice President Richardson further argue Mr. Carroll cannot obtain injunctive relief because he did not suffer irreparable harm.  Mr. Carroll has not timely responded to this motion pending for forty-five days.[96] Having reviewed the evidence, we find Director Austin and Associate Vice President Richardson are entitled to qualified immunity.  We further find the Eleventh Amendment bars Mr. Carroll from seeking injunctive relief against Director Austin and Vice President Richardson because he does not allege an ongoing violation of federal law.

### A.    Director Austin and Vice President Richardson are entitled to qualified immunity.

"Qualified immunity provides a defense for government officials 'performing discretionary functions' so long 'as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known.'"[97]  "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[98]  To determine whether a government official may invoke qualified immunity, we "must determine whether the conduct violated a constitutional right, and whether the constitutional right was clearly established."[99]  "A right is clearly established for qualified immunity purposes where its contours are 'sufficiently clear that a reasonable official would understand that what [s]he is doing violates

that right."[100]  "In other words, 'the application of the right to the issue at hand must be 'beyond debate.'"[101]  "If a government official . . . reasonably thinks her conduct complies with the law, she is shielded from liability."[102]

### 1.  Mr. Carroll had a clearly established property interest in continuing his education.

Director Austin and Assistant Vice President Richardson argue Mr. Carroll did not have a clearly established property interest in continuing his education.  "Whether an asserted federal right was clearly established at a particular time . . . presents a question of …law[.]"[103]  Analyzing Pennsylvania and applicable federal law, we held in our February 14, 2020 Memorandum Mr. Carroll had a clearly established property interest in continuing his education at the time of his interim and temporary suspensions in March and April 2015.[104]  The law of the case doctrine counsels we refrain from revisiting this holding unless we discover new evidence, the law changes, or we find our earlier ruling clearly erroneous.[105]  Finding no new evidence related to Mr. Carroll's property interest, change in the law, or clear error, we decline to revisit our earlier ruling.

### 2.  Reasonable people in Director Austin's and Assistant Vice President Richardson's positions would believe their conduct complied with the law.

Although we find Mr. Carroll's right to a continuing education "clearly established," Director Austin and Assistant Vice President Richardson are entitled to qualified immunity if they "reached a reasonable, but mistaken conclusion, that the law's requirements were met."[106] Director Austin and Assistant Vice President Richardson argue reasonable persons standing in their shoes would believe their actions complied with the law.  We agree.

"[A]t a minimum, when a school charges a student with a disciplinary violation, it must provide 'notice and an opportunity for hearing appropriate to the nature of the case.'"[107] The Supreme Court outlined the requirements of due process for a suspension of ten days or less of a

13

public-school student in *Goss v. Lopez*. [108]  The Court held the Due Process Clause requires school officials to give the student "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."[109]  Notice and hearing should precede the student's removal from the school, unless the student "poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process" at which point the student "may be immediately removed from school."[110]  If the student poses a danger to others, the required notice and hearing should occur "as soon as practicable" after removal.[111]

The Supreme Court recognized longer suspensions and expulsions "may require more formal procedures."[112]  The formal procedures required depend on (1) the private interests at stake; (2) the governmental interests at stake, including the government function involved and the fiscal and administrative burdens entailed by additional or substitute requirements; and (3) the fairness and reliability of the existing procedures and the probable value, if any, of any additional or substitute procedural safeguards.[113]

We need not determine the precise due process requirements owed to Mr. Carroll or whether Director Austin and Assistant Vice President Richardson honored those requirements to determine whether they are entitled to qualified immunity.  We must rather determine whether a reasonable person standing in their shoes would believe they afforded Mr. Carroll adequate due process.  Based on the evidence adduced, we find a reasonable person would have believed they afforded Mr. Carroll sufficient notice of the charges against him and an opportunity to be heard before his interim suspension and his temporary suspension.

We first address Mr. Carroll's interim suspension.  Mr. Carroll's interim suspension on March 27, 2015 was meant to last fewer than ten days before his scheduled April 3, 2015 hearing.

Under *Goss*, Mr. Carroll was entitled to oral or written notice of the charges against him and an opportunity to be heard.  These procedures should have preceded his removal unless he presented "continuing danger to persons or property or an ongoing threat of disrupting the academic process."[114]  Before Director Austin effectuated Mr. Carroll's interim suspension for the March 25th and March 26th incidents by handing him the letter from Assistant Vice President Richardson, she wrote him a letter describing his charges for the March 25th incident, met with him to discuss the March 25th incident, warned him not to return him to the Registrar's Office, and met with him on March 26th to discuss the March 25th incident.  At the time, Mr. Carroll was on probation for harassing and disorderly conduct and had received warnings from Assistant Director Wiafe and Assistant Vice President Richardson any contact with University employees other than Assistant Vice President Richardson about his grades would be construed as a disruption to the University's operations.  He had also been removed from the Registrar's office by the police on March 25, 2015 and arrested on March 26, 2015 for trespassing after refusing to leave the Registrar's Office.  His trespass arrest on March 26, 2015 came after Officer Yanak, Sergeant Flood, and Director Austin warned him not to return to the Registrar's Office.

A reasonable person in Director Austin and Assistant Vice President Richardson's shoes could believe under these facts Mr. Carroll presented an "ongoing threat of disrupting the academic process" warranting "immediate[] remov[al] from school" in advance of his scheduled April 3, 2015 hearing, where he would have a more fulsome opportunity to be heard on the charges against him.  Although this hearing did not take place until April 15, 2015, a reasonable person could find April 15 to be the earliest "practicable" date under *Goss* in light of Mr. Carroll's arrest on March 31, 2015, resulting in his incarceration until April 8, 2015.

A reasonable person could also believe Mr. Carroll received sufficient notice and an opportunity to be heard when Director Austin sent him written notice of the charges arising from the March 25th incident, met with him to discuss the March 25th incident, scheduled time to discuss the March 25th incident further on March 27th, and discussed the March 25th and March 26th incident with him on March 27th before issuing the interim suspension.[115]

We next address Mr. Carroll's temporary suspension.  Before Director Austin suspended Mr. Carroll she gave him:  (1) a letter dated March 26, 2015 outlining the charges related to the March 25th incident and scheduling his hearing for April 3, 2015; (2) a letter dated March 27, 2015 outlining the charges related to the March 26th incident and scheduling his hearing for April 3, 2015; (3) the letter issuing the interim suspension; (4) a letter dated April 9, 2015 outlining the charges related to the March 27th incident, scheduling his hearing for April 15, 2015, and informing him "[a]ll of your cases will be heard during this meeting"; and (5) a letter dated April 9, 2015 outlining the charges related to the March 31st incident and scheduling his hearing for April 15, 2015.

Director Austin received a notification showing Mr. Carroll opened the email attaching the two April 9, 2015 letters on April 10, 2015.[116]  Mr. Carroll did not attempt to reschedule the April 15, 2015 hearing or notify anyone of a potential conflict.  Director Austin then held the scheduled hearing on April 15, 2015.  Mr. Carroll failed to attend.  A reasonable person in Director Austin's shoes would believe the five letters informing Mr. Carroll of the charges against him, countless verbal warnings, at least two informal meetings, and a formal hearing afforded Mr. Carroll sufficient notice of the charges against him and an opportunity to be heard.

While we do not opine on the exact procedures owed to Mr. Carroll or whether Director Austin and Vice President Richardson complied with those procedures, we do not find Director

Austin and Assistant Vice President Richardson "knowingly violated" Mr. Carroll's right to due process. They are entitled to qualified immunity.

### B.   The Eleventh Amendment bars Mr. Carroll's claim for injunctive relief.

Mr. Carroll appears to seek injunctive relief against Director Austin and Assistant Vice President Richardson in their official capacities. While the Eleventh Amendment generally bars suits against officials acting in their official capacity, "state officials may be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law."[117] "To avoid the bar of the Eleventh Amendment . . . '[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective.'"[118]

Mr. Carroll challenges his temporary suspension from Millersville University, which ended in Spring 2015. The relief he seeks is not "prospective" and the violation he seeks to remedy is not "ongoing." The Eleventh Amendment bars his claim.

### III.   Conclusion

We grant judgment to Director Austin and Associate Vice President Richardson, finding them entitled to qualified immunity and finding the Eleventh Amendment bars Mr. Carroll's claims for injunctive relief.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of a motion for summary judgment. Assistant Vice President Richardson and Director Austin filed a statement of undisputed facts at ECF Doc. No. 254-1 and an appendix at ECF Doc. No. 254-3. References to the appendix are by ECF document number and the corresponding Bates number, for example, "1a."

[2] *Id.*

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 19a-20a.

[8] *Id.* at 20a.

[9] *Id.*

[10] *Id.*

[11] *Id*

[12] *Id.* at 11a.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 15a.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 021a.

[20] *Id.* at 022a.

[21] *Id.*

[22] *Id.* at 16a-18a, 24a, 26a.

[23] *Id.* at 16a.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 16a-17a.

[30] *Id.* at 17a.

[31] *Id.*

[32] *Id.* at 24a.

[33] *Id.* at 25a.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 5a-6a.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 28a.

[44] *Id.*

[45] *Id.* at 6a.

[46] *Id.*

[47] *Id.* at 47a.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 26a.

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at 7a.

[57] *Id.*  at 24a-25a.

[58] *Id.*  at 28a-29a.

[59] *Id.* at 7a.

[60] *Id.* at 31a.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 35a.

[64] *Id.* at 8a.

[65] *Id.* at 35a.

[66] *Id.*

[67] *Id.* at 33a, 36a.

[68] *Id.* at 36a.

[69] *Id.* at 9a.

[70] *Id.* at 9a.

[71] *Id.*

[72] *Id.* at 50a-51a.

[73] *Id.*

[74] *Id.* at 51a.

[75] *Id.* at 52a-53a.

[76] *Id.* at 51a.

[77] *Id.* at 50a-51a.

[78] *Id.* at 51a.

[79] *Id.* at 39a.

[80] *Id.* at 40a.

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.* at 9a.

[88] *Id.*

[89] *Id.* at 42a.

[90] *Id.*

[91] ECF Doc. No. 109 at 27, 34.

[92] ECF Doc. No. 213.

[93] *Id.*

[94] *E.g.,* ECF Doc. Nos. 217, 221, 225, 226, 227, 228, 229, 230, 234, 241, 247, and 248.

[95] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant

carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986))."If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[96] Mr. Carroll will not respond to summary judgment but instead files varied requests during the time for response to summary judgment seeking extraordinary relief, removal of state criminal proceedings to this Court, mandamus, motions to amend without proffering his proposed amendment, and for further extensions. ECF Doc. Nos. 255, 257, and 259.  We provided Mr. Carroll with several extensions to amend. We provided him with two extensions to answer the summary judgment motions.  *See* ECF Doc. No. 260 for an explanation. He filed this case over six years ago and will not respond to the legal issues surrounding the potential qualified immunity of the remaining Defendants.

[97] *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 260 (E.D. Pa. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[98] *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 162 (3d Cir. 2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[99] *Furey*, 884 F. Supp. 260 (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).

[100] *Borrell*, 870 F.3d at 162 (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (quoting *Saucier*, 533 U.S. at 202)).

[101] *Id.*(quoting *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016)).

[102] *Id.*

[103] *Spady v. Bethlehem Area Sch.Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Elder v. Holloway*, 510 U.S. 510, 416 (1994)).

[104] ECF Doc. No. 109 at 27, 29-35.

[105] *Pub. Int. Rsch.Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116-17 (3d Cir. 1997).

[106] *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 261 (E.D. Pa. 2012).

[107] *Id.*at 246 (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975)).

[108] *Goss*, 419 U.S. at 565-66.

[109] *Id.* at 581.

[110] *Id.* at 582.

---

[111] *Id.* at 582-583.

[112] *Id*. at 584.

[113] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[114] *Goss*, 419 U.S. at 582.

[115] In our February 14, 2020 Memorandum, we could not find Director Austin and Assistant Vice President Richardson entitled to qualified immunity for the interim suspension based on the alleged facts as more fully described in our February 14, 2020 Memorandum. (ECF Doc. No. 109). Director Austin and Assistant Vice President Richardson argued a pre-removal hearing was not required because Mr. Carroll "pose[d] a danger to persons or property" under *Goss*. ECF Doc. No. 99 at 17. We found Director Austin and Assistant Vice President Richardson did not establish Mr. Carroll presented a "danger," warranting pre-hearing removal. But *Goss* also allows removal pre-hearing and pre-notice when a student's presence poses "an ongoing threat of disrupting the academic process." *Goss*, 419 U.S. at 582 . With the benefit of the developed record, we find sufficient evidence Director Austin and Assistant Vice President Richardson reasonably believed Mr. Carroll presented "an ongoing threat of disrupting the academic process" given his repeated trips to the Registrar's Office and repeated contacts with University officials after being warned to desist such contact. We also noted "the interim suspension lasted more than ten days" and suggested Mr. Carroll may have been owed a "higher level of due process than required in *Goss*." ECF Doc. No. 109 at 33. We now know Mr. Carroll's suspension lasted more than ten days because Mr. Carroll trespassed on the University's campus (change to "the University's campus"), got arrested, and spent nine days incarcerated resulting in his hearing being delayed until April 15, 2015. We also did not know whether Director Austin held Mr. Carroll's April 3, 2015 hearing. *Id.* at 34. ("[W]e can fairly question whether the April 3, 2015 hearing occurred.") We now know the University rescheduled Mr. Carroll's April 3, 2015 hearing due to his incarceration.

[116] In our February 14, 2020 Memorandum, we could not locate an allegation or document showing Mr. Carroll received notice for his March 26 conduct *before* his alleged hearing on April 15, 2015.) ECF Doc. No. 109 at 34. Nor could we "locate anything providing Mr. Carroll notice of the April 15, 2015 hearing." *Id.* But the facts adduced in discovery show Mr. Carroll had notice of the charges against him for his March 26, 2015 conduct and had notice of his April 15, 2015 hearing. Director Austin handed Mr. Carroll a letter describing the charges against him in connection his March 26, 2015 conduct. When she rescheduled the hearing for the March 26, 2015 conduct and scheduled the hearing for the March 27, 2015 and March 31, 2015 conduct for April 15, 2015, she received an electronic notification showing Mr. Carroll received her email on April 10, 2015.

[117] *Nunez v. Fisher*, No. 21-2343, 2021 WL 2473931, at *2 (E.D. Pa. Jun. 17, 2021).

[118] *Id.* at *3 (quoting *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp.*, 465 U.S. 89, 102 (1984))).